UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                   :
UNITED STATES OF AMERICA           :
                                   :
          -v.-                     :    07 Cr. 610 (RMB)
                                   :
HAFIZ MUHAMMAD ZUBAIR NASEEM,      :
                                   :
               Defendant.          :
                                   :
- - - - - - - - - - - - - - - - - -x


JOINT REQUESTS TO CHARGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - -**x**
                                    :
**UNITED STATES OF AMERICA**         :
                                    :
          -**v.**-                   :    **07 Cr. 610 (RMB)**
                                    :
**HAFIZ MUHAMMAD ZUBAIR NASEEM,**    :
                                    :
                 **Defendant.**      :
                                    :
- - - - - - - - - - - - - - - - - -**x**

### JOINT REQUESTS TO CHARGE

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the parties respectfully request that the Court include the following instructions in its charge to the jury.

Table of Contents

Request No.                                                      Page

1    General Requests. . . . . . . . . . . . . . . . . . . 1

2    The Indictment. . . . . . . . . . . . . . . . . . . . 2

3    Theory of the Defense.. . . . . . . . . . . . . . . . 4

4    Count One: Conspiracy --
         The Statute and the Charge . . . . . . . . . . 5

5    Conspiracy:  Elements Of Conspiracy . . . . . . . . . 9

6    Conspiracy:  First Element --
         Existence Of The Conspiracy. . . . . . . . . 10

7    Conspiracy:  Second Element --
         Membership In The Conspiracy.. . . . . . . . 14

8    Conspiracy:  Third Element --
         Overt Acts  . . . . . . . . . . . . . . . . . 18

9    Conspiracy:  Time Of Conspiracy.. . . . . . . . . . 21

10   Counts Two Through Twenty-Nine:
         Substantive Offenses.. . . . . . . . . . . . 22

11   Securities Fraud:
         The Statute And The Rule . . . . . . . . . . 23

12   Securities Fraud:
         The Statutory Purpose. . . . . . . . . . . . 27

13   Securities Fraud:
         Elements Of The Offense. . . . . . . . . . . 29

14   Securities Fraud: First Element --
         Scheme Or Artifice To Defraud --
         Insider Trading. . . . . . . . . . . . . . . 30

15   Securities Fraud: First Element --
         Scheme Or Artifice To Defraud --

-i-

Misappropriation.. . . . . . . . . . . . . .  32

16   Securities Fraud: First Element --
     Scheme Or Artifice To Defraud --
     Fiduciary Relationship.. . . . . . . . . .  35

17   Securities Fraud: First Element --
     Scheme Or Artifice To Defraud --
     Breach Of Fiduciary Duty.. . . . . . . . .  38

18   Securities Fraud: First Element --
     Scheme Or Artifice To Defraud --
     Nonpublic Nature Of Information. . . . . . .  39

19   Securities Fraud: First Element --
     Scheme Or Artifice To Defraud --
     Materiality. . . . . . . . . . . . . . . .  41

20   Securities Fraud:  First Element --
     Knowing Possession/Use
     of Inside Information. . . . . . . . . . .  42

21   Securities Fraud: First Element --
     Scheme Or Artifice To Defraud --
     Benefit To Tipper. . . . . . . . . . . . .  44

22   Securities Fraud: First Element --
     Scheme Or Artifice To Defraud --
     In Connection With Purchase Or Sale. . . . .  46

23   Securities Fraud: Second Element --
     Knowledge, Intent and Willfulness. . . . . .  47

24   Securities Fraud: Third Element --
     Instrumentality of Interstate Commerce.. . . .  52

25   Venue.. . . . . . . . . . . . . . . . . .  54

26   Conscious Avoidance.. . . . . . . . . . . .  55

27   Poof of Profit Not Necessary. . . . . . . .  57

28   Defendant's Right Not to Testify. . . . . . .  58

29    Defendant's Testimony.. . . . . . . . . . . . .    59

30    Law Enforcement Witnesses.. . . . . . . . . . .    60

31    Particular Investigative
           Techniques Not Required. . . . . . . . . .    61

32    Character Witnesses.. . . . . . . . . . . . .    62

33    Variance in Dates, Times, Amounts, Etc... . . . . .    63

34    Charts and Summaries... . . . . . . . . . . .    64

35    Persons Not On Trial... . . . . . . . . . . .    65

36    Stipulations. . . . . . . . . . . . . . . . .    66

37    Uncalled Witnesses -- Equally
           Available To Both Sides... . . . . . . . .    67

38    Expert Testimony... . . . . . . . . . . . . .    69

39    Use Of Evidence Obtained Pursuant
           To Searches. . . . . . . . . . . . . . .    71

40    Preparation Of Witnesses... . . . . . . . . .    72

<u>REQUEST NO.  1.</u>

<u>General Requests</u>

The parties respectfully request that the Court give its usual instructions to the jury on the following matters:

a.    Function of Court and Jury.

b.    Indictment Not Evidence.

c.    Statements of Court and Counsel Not Evidence.

d.    Burden of Proof and Presumption of Innocence.

e.    Reasonable Doubt.

f.    Government Treated Like Any Other Party.

g.    Definitions, Explanations and Examples of Direct and Circumstantial Evidence.

h.    Credibility of Witnesses.

i.    Right to See Exhibits and Have Testimony Read During Deliberations.

j.    Consideration Of Each Defendant and Each Count Separately.

k.    Punishment Is Not To Be Considered By The Jury.

l.    Verdict Of Guilt Or Innocence Must Be Unanimous.

m.    Sympathy: Oath Of Jurors.

REQUEST NO.  2.

The Indictment

Hafiz Muhammad Zubair Naseem, the defendant, is charged in an Indictment.  The Indictment is not evidence, but simply contains the formal charges against the defendant.  It may not be considered by you as evidence of the guilt of the defendant.  The Indictment contains 26 charges or counts.  Each count charges a separate crime.  Although there are facts in common to the different counts, each count must be considered separately.  You must return a separate verdict as to each count.

Count One of the Indictment charges that NASEEM, the defendant, conspired with Ajaz Rahim, and others to violate the federal securities laws by trading in securities while in possession of confidential, material, nonpublic information, concerning certain mergers and acquisitions, which information the defendant obtained in violation of his fiduciary and other duties of trust and confidence.

Counts Two through Twenty-Nine of the Indictment each charge NASEEM with actually committing fraud in connection with the purchase and sale of certain securities, by enabling Ajaz Rahim to trade in certain securities on the basis of **confidential**[1] material, nonpublic information, that Naseem

---

[1]    Language in bold typeface is requested by the Defendant and objected to by the Government.  Language in italics is requested by the Government and objected to by the defense.

-2-

disclosed to Rahim, in breach of Naseem's duty to Credit Suisse

Securities and/or its clients, to keep that information

confidential.

> Adapted from the charge of Hon. Richard M.
> Berman, in _____ United States v. Robles,
> 00 Cr. 1169 (RMB); and from L. Sand, *et al.*,
> Modern Federal Jury Instructions, Instr. 3-1.

---

Otherwise, the parties jointly propose the remaining language
which appears in regular font.

REQUEST NO. 3.

Theory of the Defense

The defendant argues that he did not impart any confidential material non-public information to Ajaz Rahim. He further argues that Rahim, as a sophisticated investor, may have based his trading decisions on his own analysis or on information already available to the public. Moreover, the defendant argues that even if Rahim received confidential information, it would be from other sources and without the defendant's knowledge. If you have a reasonable doubt as to whether Hafiz Naseem gave Ajaz Rahim confidential material non-public information regarding the transactions charged in the Indictment, and that Rahim based his trading decisions on that information then you must acquit Naseem on all charges.

REQUEST NO.  4.

Count One:  Conspiracy -- The Statute And The Charge

Count One of the Indictment is the conspiracy count.
*The other counts are referred to as substantive counts.  Unlike*
*the conspiracy charge, which is a charge of plotting, scheming,*
*or agreeing to commit offenses, the substantive counts allege the*
*actual commission of offenses.*  I will instruct you on the
substantive violations later in this charge.  I will now instruct
you on the conspiracy charge.

In Count One, Hafiz Muhammad Zubair Naseem, the
defendant, is charged with violating Title 18, United States
Code, Section 371.  That section provides as follows:

> If two or more persons conspire to commit any
> offense against the United States ... and one
> or more of such persons do any act to effect
> the object of the conspiracy, each [is guilty
> of a crime].

The defendant is charged in Count One with
participating in a conspiracy to violate federal statutes that
make it unlawful to commit fraud in connection with the purchase
and sale of securities.  Count One charges, in summary, that from
around April 2006 through around February 2007, NASEEM was
employed, as an investment banker, at Credit Suisse Securities
which is an investment bank.  Naseem worked in the Global Energy
Group within the Investment Banking Division at the firm.  A
significant portion of Credit Suisse's business was devoted to

-5-

advising corporations on various financings and business related transactions. While employed at Credit Suisse, NASEEM had access to **confidential** material, nonpublic information relating to **certain** business transactions involving Credit Suisse clients. It is alleged that Credit Suisse had policies that prohibited its employees, including Naseem, from disclosing such information to those outside the bank, or using the information for any non-business purpose.

Count One charges that among the **confidential** material, nonpublic information to which Naseem had access was the following information relating to business combination transactions involving its clients that had not yet been announced to the public:

(1)    Babcock and Brown Infrastructure to acquire Northwestern Energy Corporation;

(2)    Woodside offer to acquire Energy Partners, Ltd.;

(3)    Compagnie Generale de Geophysique S.A. to acquire Veritas DGC;

(4)    Apollo Management L.P. to acquire Jacuzzi Brands, Inc.;

(5)    CB Richard Ellis Group, Inc. to acquire Trammell Crow Company;

(6)    Express Scripts Inc. to acquire Caremark RX, Inc.;

(7)    M&F Worldwide to acquire John Harland;

(8)    Tenaris S.A. to acquire Hydril; and

(9)    Kohlberg Kravis & Roberts and others to acquire TXU.

Count One alleges that, from around April 2006 through around February 2007, Naseem misappropriated this **confidential** material, nonpublic information from Credit Suisse and its clients, in violation of his fiduciary and other duties of trust and confidence that he owed to Credit Suisse and its clients, in violation of the expectations of confidentiality of Credit Suisse's clients, and in violation of Credit Suisse's written policies regarding the use and safekeeping of confidential client information.  It is alleged that Naseem, the defendant, unlawfully passed the information that he misappropriated to Ajaz Rahim, with the understanding that Rahim would use the misappropriated information to purchase and sell securities.

Count One alleges that from about April 2006 through February 2007, Rahim, knowing that Naseem had misappropriated information from Credit Suisse and its clients, purchased and sold securities on the basis of that information, and received substantial illegal profits as a result.

Count One charges that from around April 2006 through around February 2007, Naseem and Rahim conspired, or agreed, to commit fraud in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.  Count One charges that in furtherance of this conspiracy and to effect its

-7-

illegal object, the defendant committed a number of overt acts in the Southern District of New York and elsewhere, including providing Rahim with **confidential** material, nonpublic information, on several occasions, concerning the various transactions I mentioned earlier.

A conspiracy to commit a crime is an entirely separate and different offense from the substantive crime that may be the objective of the conspiracy. The essence of the crime of conspiracy is an agreement or understanding to violate the law. Thus a conspiracy may exist even if it should fail in its purposes.

Consequently, in a conspiracy charge, there is no need to prove that the crime or crimes that were the objectives of the conspiracy were actually committed. You may, however, consider proof of those charges as evidence that a conspiracy existed. Of course, if the defendant participates in a conspiracy and the crime or crimes that were the object of the conspiracy <u>were</u> committed, the defendant may be guilty of both the conspiracy and the substantive crimes, as I will instruct you shortly. The point is that the crime or crimes that were the objectives of the conspiracy need not have been actually committed for a conspiracy to exist.

> Adapted from the charge of Hon. Richard M. Berman, in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB); and from L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u>, Instrs. 3-2, 19-1, 19-2.

-8-

REQUEST NO.  5.

Conspiracy:  Elements of Conspiracy

To sustain its burden of proof with respect to the allegation of conspiracy, the Government must separately prove beyond a reasonable doubt the following three elements as to the conspiracy count:

First, the existence of the conspiracy charged -- that is, the existence of an agreement or understanding to violate the laws of the United States that make it a crime to commit fraud in connection with the purchase and sale of securities;

Second, that the defendant unlawfully, knowingly and willfully became a member of that conspiracy; and

Third, that some member of the conspiracy -- not necessarily the defendant -- knowingly committed at least one overt act in furtherance of the conspiracy during the life of the conspiracy.

Now let us separately consider these three elements.

Adapted from the charge of Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002); and L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 19-3.

<u>REQUEST NO. 6.</u>

<u>Conspiracy:  First Element -- Existence Of The Conspiracy</u>

What is a conspiracy?  A conspiracy is a combination, an agreement, or an understanding of two or more people to accomplish by concerted action a criminal or unlawful purpose. In this case, there is one unlawful purpose that is alleged: fraud in connection with the purchase or sale of securities.

The gist, or essence, of the crime of conspiracy is the unlawful combination or agreement to violate the law.  *The success of the conspiracy, or the actual commission of the criminal act that is the object of the conspiracy, is not an essential element of the crime.*

The conspiracy alleged here is therefore the <u>agreement</u> to commit the crimes.  It is an entirely distinct and separate offense from the <u>actual</u> commission of any of the crimes.

In order to show that a conspiracy existed, the evidence must show that two or more persons, in some way or manner, through any contrivance, explicitly or implicitly (that is, silently), came to an understanding to violate the law and to accomplish an unlawful plan.  The Government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they have formed a conspiracy to violate the law and spelling out all the details.  Common sense tells you that, when people, in fact,

agree to enter into a criminal conspiracy, much is left to the unexpressed understanding.  It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

**In determining whether there has been an unlawful agreement, as alleged,** *Since conspiracy by its very nature is characterized by secrecy*, you may consider the acts and conduct of the alleged co-conspirators that were done to carry out the apparent criminal purpose.  The adage, "Actions speak louder than words," applies here.  Often, the only evidence that is available with respect to the existence of a conspiracy is of disconnected acts and conduct on the part of the alleged individual co-conspirators.  When taken together and considered as a whole, those acts and conduct may warrant the inference that a conspiracy existed as conclusively as would direct proof.

So you must first determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy charged in the Indictment.  In considering this first element, you should consider all the evidence that has been admitted with respect to the conduct and statements of the defendant -- except to the extent I may have instructed you otherwise -- and the inferences that may be reasonably drawn from them.  It is sufficient to establish the existence of the conspiracy, if, from the proof of all the relevant facts and circumstances, you find beyond a reasonable doubt that the minds

-11-

of two co-conspirators met in an understanding way to accomplish, by the means alleged, the alleged object of the conspiracy.

Objective Of The Conspiracy

According to the Indictment, there was one object, or purpose, of the conspiracy, which was, in substance, to violate the federal securities laws by trading in certain securities by Ajaz Rahim based upon confidential, material, nonpublic information that had been disclosed by Naseem, the defendant, in violation of Naseem's duty not to disclose confidential information.

If you find that the Government has failed to prove that this object was an objective of the conspiracy, then you must find the defendant not guilty on the conspiracy count. **The Government has satisfied its burden with respect to this element only if you all agree that the alleged co-conspirators agreed to accomplish the object charged in Count One of the Indictment.** However, if you find that the defendant agreed to accomplish the object charged in Count One of the Indictment, the illegal purpose element will be satisfied.

I will shortly explain the particular elements of the crime that is alleged to be the object of the conspiracy – violation of the federal securities laws by disclosing **confidential** material, nonpublic information, in violation of the defendant's duty to Credit Suisse and/or its clients not to

-12-

disclose confidential information, for the purpose of enabling a

an alleged co-conspirator to trade in certain securities on the

basis of that confidential material, nonpublic information.

    Adapted from the charge of Hon. Richard M. Berman, in
    <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB) (S.D.N.Y.,
    September 17 - October 2, 2002); and L. Sand, *et al.*,
    <u>Modern Federal Jury Instructions</u>, Instr. 19-4.

REQUEST NO.  7.

Conspiracy:  Second Element -- Membership In The Conspiracy

If you conclude that the Government has proven beyond a reasonable doubt that the conspiracy charged in the Indictment existed, you must next determine whether the defendant has been shown beyond a reasonable doubt to have participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective.

To satisfy its burden, the Government must prove, beyond a reasonable doubt, that Naseem knowingly, willfully and unlawfully entered into that conspiracy, _i.e._, into that agreement, and that he did so with a criminal intent, that is, with a purpose to violate the law, and that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objective.

Unlawfully, Willfully, and Knowingly

I will now define the terms "knowingly," "willfully," and "unlawfully," which I have used.  An act is done "knowingly" if it is done purposefully and deliberately and not because of mistake, accident, mere negligence or some other innocent reason.

"Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.

-14-

"Unlawfully" means simply contrary to law.  The Defendant need not have known that he was breaking any particular law or any particular rule.  The Defendant need only have been aware of the generally unlawful nature of his acts or plans.

Before a defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan.  The key question is whether the Defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

Knowledge is often a matter of inference from the proven facts.  We cannot look into a person's mind and know what that person is thinking.  It is not necessary that a defendant be fully informed as to all the details of the conspiracy in order to justify an inference of guilty knowledge on his part.  To have knowledge of a conspiracy, a defendant need not have known the full extent of the conspiracy or all of its activities or all of its participants.  Nor is it necessary that a defendant know every other member of the conspiracy.  In fact, a defendant may know only one other member of the conspiracy and still be a co-conspirator.  Nor is it necessary that a defendant receive any monetary benefit from participating in the conspiracy or have a financial stake in the outcome so long as he, in fact, participated in the conspiracy in the manner I have explained.  If you find that the Defendant had a financial stake in the

outcome of the alleged conspiracy, then you may consider that as a factor in deciding whether he was a member of the conspiracy.

The duration and extent of a defendant's participation in a conspiracy has no bearing on the issue of a defendant's guilt.  A defendant need not have joined the conspiracy at the outset.  A defendant may have joined it for any purpose at any time in its progress, and that defendant will still be held responsible for all that was done before that defendant joined and all that was done during the conspiracy's existence while the defendant was a member.  Each member of a conspiracy may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

However, I want to caution you that the mere association by one person with one who is a conspirator does not make that person (i.e. the first person) a member of the conspiracy even when he knows that a conspiracy is taking place. Mere presence at the scene of a crime, even when coupled with knowledge that a crime is taking place, is not sufficient to support a conviction of that crime.  In other words, knowledge without participation is not sufficient to convict a person of conspiracy.  What is required or necessary is that the Defendant,

-16-

_i.e._ the alleged conspirator, participated in the conspiracy with knowledge of its unlawful purpose and with an intent to aid in the accomplishment of its unlawful objective.

In sum, the Government has the burden to prove beyond a reasonable doubt that the Defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering an illegal undertaking.  The Government has the burden to prove beyond a reasonable doubt that the Defendant, thereby, became a knowing and willing participant in the unlawful agreement — that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members.  So, too, once a person is found to be a member of a conspiracy, that person is presumed to continue being a member in the venture until the venture is terminated, unless it is shown by some affirmative proof that the person withdrew and disassociated himself from it.

> Adapted from the charge of Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002); and from L. Sand, _et al._, Modern Federal Jury Instructions, Instr. 3A-1, 19-6.

REQUEST NO.  8.

Conspiracy:  Third Element -- Overt Act

The third element in the crime of conspiracy is the requirement of an overt act.  The Government must show beyond a reasonable doubt that at least one overt act was committed in furtherance of the conspiracy by at least one of the **alleged** co-conspirators and was committed in the Southern District of New York.  I instruct you as a matter of law that Manhattan falls within the geographic boundaries of the Southern District of New York.

The purpose of the "overt act" requirement is that the law requires there to have been something more than mere agreement to reach a conviction of conspiracy.  There must also be some overt act or action that must have been taken by at least one of the alleged conspirators in furtherance of the conspiracy. The overt acts alleged are set forth in the Indictment. You may also find that overt acts were committed which were not alleged in the Indictment.  You must find that the Government has proven beyond a reasonable doubt that one of the members of the charged conspiracy — not necessarily the  Defendant in this case — took some step or action in furtherance of the conspiracy in the Southern District of New York at some point in time during the life of the conspiracy.  In determining whether an overt act occurred within the Southern District of New York, you need not

-18-

find that any alleged co-conspirator was physically present within this District, so long as you find that some overt act in furtherance of the conspiracy occurred within the District.

The overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage. The requirement of an overt act is a requirement that some action be taken during the life of the conspiracy by one of the alleged co-conspirators to further the conspiracy.

In order for the Government to satisfy the overt act requirement, it is not necessary for the Government to prove all of the overt acts alleged in the Indictment.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the Indictment. It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated, as long as it occurred while the conspiracy was still in existence.

You should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act loses its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.

> Adapted from the charge of Hon. Richard M. Berman,
> in United States v. Robles, 00 Cr. 1169 (RMB)
> (S.D.N.Y., September 17 - October 2, 2002); and

-19-

from L. Sand, *et al.*, <u>Modern Federal</u> <u>Jury</u> <u>Instructions</u>, Instrs. 19-7, 19-8.

REQUEST NO.  9.

Conspiracy:  Time of Conspiracy

The Indictment charges that the conspiracy set forth in Count One existed from in or about April 2006 through in or about February 2007.  It is not essential that the Government prove that the conspiracy started and ended on those specific dates. Indeed, it is sufficient if you find that, in fact, the charged conspiracy was formed and that it existed for some time within the period set forth in the Indictment, and that at least one overt act was committed in furtherance of the charged conspiracy within that period.

> Adapted from the charge of the Hon. Richard M.
> Berman, in United States v. Robles, 00 Cr. 1169
> (RMB) (S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO. 10.

Counts Two Through Twenty-Nine:  Substantive Offenses

The remaining counts in the Indictment, are called substantive counts.

Because the Government contends not only that there was a conspiracy but also that its objectives were actually carried out, Naseem is also charged with having committed substantive offenses.  These substantive counts are contained in Counts Two through Twenty-Nine.

> Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002); and from L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 57-19.

-22-

REQUEST NO.  11.

Securities Fraud:  The Statute and The Rule

Counts Two through Twenty-Nine each charge a specific violation of federal law prohibiting fraud in connection with the purchase and sale of securities.

The relevant statute is Section 10(b) of the Securities Exchange Act of 1934, which is codified at Title 15, United States Code, Section 78j(b).  That law provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

I will now read the relevant portion of the regulations that the United States Securities and Exchange Commission, which is commonly known as the "SEC" enacted.  Rule 10b-5, promulgated by the SEC, reads as follows:

> **Employment of manipulative and deceptive devices**.  It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of any facility of any national securities exchange,

-23-

(a) To employ any device, scheme, or artifice
to defraud ... or

(c)  To engage in any act, practice, or
course of business which operates or would
operate as a fraud or deceit upon any person,
in connection with the purchase or sale of
any security.

Specifically, Counts Two through Twenty-Nine charge (in
summary fashion):  that Hafiz Naseem, violated the above
provisions by disclosing **confidential**, material, nonpublic
information he obtained in breach of his duty not to disclose
such information to Ajaz Rahim which enabled Rahim to engage in
specific purchases or sales of securities on the basis of that
material, nonpublic information.

The specific trades charged in the Indictment are the
following:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| TWO | April 6, 2006 | purchased 2,000 shares of Northwestern Corporation |
| THREE | April 7, 2006 | purchased 2,000 shares of Northwestern Corporation |
| FOUR | April 24, 2006 | purchased 16,000 shares of Northwestern Corporation |
| FIVE | June 20, 2006 | purchased 1,000 shares of Veritas DGC, Inc. |

-24-

| SIX | July 5, 2006 | purchased 1,000 shares of Veritas DGC, Inc. |
| SEVEN | July 5, 2006 | purchased 500 shares of Veritas DGC, Inc. |
| EIGHT | July 10, 2006 | purchased 1,000 shares of Veritas DGC, Inc. |
| NINE | July 21, 2006 | purchased 1,000 shares of Veritas DGC, Inc. |
| TEN | July 21, 2006 | purchased 1,000 shares of Energy Partners, Ltd. |
| ELEVEN | July 25, 2006 | purchased 2,000 shares of Energy Partners, Ltd. |
| TWELVE | July 26, 2006 | purchased 2,000 shares of Energy Partners, Ltd. |
| THIRTEEN | July 27, 2006 | purchased 3,000 shares of Energy Partners, Ltd. |
| FOURTEEN | July 27, 2006 | purchased 3,000 shares of Energy Partners, Ltd. |
| FIFTEEN | August 31, 2006 | purchased 6,000 shares of Veritas DGC, Inc. |
| SIXTEEN | September 13, 2006 | purchased 5,000 shares of Jacuzzi Brands, Inc. |
| SEVENTEEN | September 15, 2006 | purchased 20,000 shares of Jacuzzi Brands, Inc. |
| EIGHTEEN | September 20, 2006 | purchased 5,000 shares of Jacuzzi Brands, Inc. |

| | | |
|---|---|---|
| NINETEEN | October 9, 2006 | purchased 5,000 shares of Jacuzzi Brands, Inc. |
| TWENTY | October 16, 2006 | purchased 2,000 shares of Trammell Crow Company |
| TWENTY-ONE | October 17, 2006 | purchased 8,000 shares of Trammell Crow Company |
| TWENTY-TWO | December 5, 2006 | purchased 5,000 shares of John H. Harland Co. |
| TWENTY-THREE | December 6, 2006 | purchased 15,000 shares of John H. Harland Co. |
| TWENTY-FOUR | December 7, 2006 | purchased 5,000 shares of John H. Harland Co. |
| TWENTY-FIVE | December 14, 2006 | purchased 18,000 shares of Caremark Rx, Inc. |
| TWENTY-SIX | February 5, 2007 | purchased 15,000 shares of Hydril Company |
| TWENTY-SEVEN | February 8, 2007 | purchased 5,000 shares of Hydril Company |
| TWENTY-EIGHT | February 23, 2007 | purchased 3500 $57.50 3/17/07 TXU calls |
| TWENTY-NINE | February 23, 2007 | purchased 3200 $60.00 3/17/07 TXU calls |

Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002); and from L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 57-19.

REQUEST NO.  12.

Securities Fraud:  The Statutory Purpose

The 1934 Securities Exchange Act was the second of two laws passed by Congress to provide a comprehensive plan to protect the investing public in the purchase and sale of securities that are publicly distributed.

The stock market crash of 1929 led to much legislation in the area of federal regulation.  Included in this regulation was the Securities Act of 1933 and the creation of the SEC.  The Securities Act of 1933 was enacted to protect the investing public in the purchase of stock that is publicly distributed. The Securities Act of 1933 provides a comprehensive plan requiring full and fair disclosure of all important facts in connection with a distribution of stock.  Such disclosures are designed to enable the investing public to make realistic appraisals of the merits of stocks so that investors may make informed investment decisions.

When it enacted the Securities Act of 1933, Congress recognized that the purchase of a stock is different from the purchase of a vegetable bought in the grocery store in that the average investor is not in a position to make a personal investigation to determine the worth, quality and value of stocks.

-27-

Following the enactment of the Securities Act of 1933 requiring full and fair disclosure relating to the offering of stock to the investing public, Congress enacted the Securities Exchange Act of 1934 to ensure fair dealing and outlaw deceptive and inequitable practices by those selling or buying securities on the securities exchanges, over the counter markets or in face-to-face transactions.  Among the primary objectives of the Securities Exchange Act of 1934 are the maintenance of fair and honest security markets and the elimination of manipulative practices that tend to distort the fair and just price of stock. Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity undermined the function and purpose of a free market.

> Adapted from the charge of Hon. Leonard B. Sand in United States v. Pignatiello, 96 Cr. 1032 (LBS) (S.D.N.Y., July 14, 1999); the charge of Hon. Loretta A. Preska in United States v. Drescher, 00 Cr. 662 (LAP) (S.D.N.Y., July 26, 2001); and from L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 57-20.

REQUEST NO. 13.

Securities Fraud:  Elements Of The Offense

To find the defendant guilty of any of Counts Two through Twenty-Nine you must find that the Government has proven the following elements beyond a reasonable doubt:

First, that in connection with the purchase or sale of the security specified in the Count you are considering, the defendant employed a device, scheme or artifice to defraud, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of the specified security;

Second, that the defendant acted willfully, knowingly and with the intent to defraud; and

Third, that the defendant, or his co-schemer, used, or caused to be used, any means or instruments of transportation or communication in interstate commerce or the mails in furtherance of the fraudulent conduct.

> Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002); and from L. Sand, et al., Modern Federal Jury Instructions, Instr. 57-21.

-29-

REQUEST NO. 14.

Securities Fraud:  First Element --
Scheme or Artifice to Defraud -- Insider Trading

The first element that the Government must prove beyond a reasonable doubt is that, in connection with the purchase or sale of the security specified in the Count of the Indictment that you are considering, the defendant employed a device, scheme or artifice to defraud, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of the specified security.

A "device, scheme or artifice to defraud" is merely a plan for the accomplishment of any fraudulent objective.

"Fraud" is a general term that embraces all ingenious efforts and means that individuals devise to take advantage of others.  The law which the defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts.

The specific "device, scheme or artifice," and "act, practice, or course of business" that the defendants are charged with committing in Counts Two through Twenty-Nine is known as "insider trading."  An "insider" is one who comes into possession of material, nonpublic information about a specific security or stock by virtue of a relationship that involves trust and confidence.  If a person has such "inside information" by virtue of a position of trust or confidence, the law forbids him or her

-30-

from trading in the securities in question, or causing others to

trade in such securities on the basis of that information.

>Adapted from the charge of the Hon. Richard M.
>Berman, in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169
>(RMB) (S.D.N.Y., September 17 - October 2, 2002);
>and from L. Sand, *et al.*, <u>Modern Federal Jury</u>
><u>Instructions</u>, Instr. 57-23.

REQUEST NO. 15.

Securities Fraud:  First Element -- Scheme
or Artifice to Defraud -- Misappropriation

In this case, the Government contends that Hafiz
Naseem, the defendant, was the so-called "insider" who
"misappropriated" material, nonpublic information concerning
certain companies, which information he obtained as a result of
his position as an investment banker at Credit Suisse, in
violation of fiduciary and other duties of trust and confidence
he owed to Credit Suisse and/or its clients.  The Government
contends that Naseem passed that information to Ajaz Rahim with
the understanding that Rahim would use the information to
purchase and sell securities, and thereby receive substantial
illegal profits.  **The defendant asserts that he never passed any
of the alleged information to Rahim and that Rahim could have
based his trading decisions on publicly available information, or
his own analysis, or upon insider information obtained from
another source of which the defendant had no knowledge.**

If you find that the Government has established the
existence of such a scheme, then I instruct you that a scheme to
defraud has been established.  A person does not need to work
directly for, or have any direct relationship with, the company
that originally issued the securities in question to be guilty of
insider trading.  When a person improperly obtains and trades in

-32-

securities on the basis of inside information, that person is called a "misappropriator."

Wrongfully taking and using information in violation of a duty to hold the information in confidence, is the equivalent of stealing such information from its rightful owner or the person entrusted with it. **However, if you find that there is a reasonable doubt that any information was passed on by the defendant to Ajaz Rahim, or the information passed on by the defendant was not material or was already available to the public there can be no breach of confidence.** Here, the information in question is material, nonpublic information about certain companies, which the Government contends was misappropriated by defendant Naseem in breach of his fiduciary and other duties to Credit Suisse and/or its clients. **The defendant argues that he never passed any material, non-public information to Ajaz Rahim and received no personal benefit.**

Misappropriation of nonpublic information -- which is a type of property -- by those who owe a duty to the owner of the property, or one who holds the property for the owner, is a form of fraud. In the eyes of the law, the theft of nonpublic, material information is no different in kind from the theft of money or other valuable property. The one qualification on this principle is that the information that is stolen must be material and nonpublic. I will define those terms for you shortly.

-33-

Adapted from the charge of the Hon. Richard M. Berman, in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO.  16.

Securities Fraud:  First Element -- Scheme
or Artifice to Defraud -- Fiduciary Relationship

In order to find that the Government has established
the first of the three essential elements of the crime of insider
trading – namely, that, in connection with the purchase or sale
of a security, the defendant employed a device, scheme or
artifice to defraud, or engaged in a course of conduct that
operated, or would operate, as a fraud or deceit upon a purchaser
or seller of the specified security – you must be persuaded, with
respect to the Count you are considering, of each of the
following three things beyond a reasonable doubt.  First, that
Naseem had a relationship of trust and confidence with Credit
Suisse and its clients, and as a result of that relationship was
entrusted with information with the reasonable expectation that
he would keep it confidential and would not use it for personal
benefit.  Second, that Naseem directly or indirectly breached
that trust by disclosing to Rahim material, nonpublic information
relating to the potential and actual business transactions as
alleged in the indictment.  And third, that the disclosure of
such information was **intentionally** made for the improper purpose
of exploiting the information for personal benefit.

With respect to the first factor, to find that the
defendant engaged in insider trading, you must find that the
defendant had a fiduciary or other relationship of trust and

-35-

confidence with Credit Suisse and/or certain of its specified clients.  Such a relationship is alleged to arise out of Naseem's employment relationship with Credit Suisse.  "Fiduciary" means characterized by faith, trust, and confidence.  The question for you to consider is whether Credit Suisse and/or its clients expected Naseem to keep confidential, and to refrain from improperly disclosing, the information at issue in this case.

Whether a relationship giving rise to such a duty existed is ultimately a question of fact, which depends on the particulars of the interaction between the parties and the nature of their relationship.  That relationship may have been either formal or informal.  In considering whether such a duty existed, you may examine any written policies or procedures employed by Credit Suisse to inform its employees of their responsibilities under the federal securities laws.  You may consider any memoranda, other written notifications, or oral notifications from Credit Suisse or its officers or employees to Naseem concerning the use or disclosure of material, nonpublic information.  However, a duty of confidentiality need not have been expressed explicitly or in writing.  It may be inferred, for example, from the nature and circumstances of Naseem's position as a Credit Suisse investment banker.

> Adapted from the charges of the Hon. Richard M.
> Berman, in United States v. Robles, 00 Cr. 1169
> (RMB) (S.D.N.Y., September 17 - October 2, 2002);

the Hon. Kimba M. Wood, in <u>United States</u> v. <u>James J. McDermott et al.</u>, 00 Cr. 61 (KMW).

<u>REQUEST NO.  17.</u>

Securities Fraud:  First Element -- Scheme
<u>or Artifice to Defraud -- Breach Of Fiduciary Duty</u>

If you find that the defendant had a fiduciary or other relationship of trust and confidence with Credit Suisse and/or certain of its specified clients, then you must next consider whether the defendant breached that duty by communicating material, nonpublic information to Ajaz Rahim, in exchange for a personal benefit, in breach of his duty to keep such information confidential.

> Adapted from the charge of the Hon. Richard M.
> Berman, in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169
> (RMB) (S.D.N.Y., September 17 - October 2, 2002);
> and from L. Sand, *et al.*, <u>Modern Federal Jury</u>
> <u>Instructions</u>, Instr. 57-23.

<u>REQUEST NO.  18.</u>

<u>Securities Fraud:  First Element -- Scheme
or Artifice to Defraud -- Nonpublic Nature of Information</u>

In order to find that Naseem breached his duty of
trust, you must be persuaded, beyond a reasonable doubt, as to
the Count you are considering, that the information Naseem
disclosed to Rahim, was nonpublic at the time it was disclosed.

Information is nonpublic if it is not available to the
public through such sources as press releases, Securities and
Exchange Commission filings, trade publications, analyst reports,
newspapers,  magazines, television, radio, word of mouth,
**websites, internet chat rooms, and online message boards**.  It is
important to recognize, however, that the fact that information
has not appeared in a newspaper  or other widely available public
medium is not alone dispositive of whether the information is
nonpublic.  Sometimes a corporation is willing to make
information available to securities analysts or prospective
investors who ask for it even though it never may have appeared
in any newspaper or other publication.  The key word is
"available."  If the information is out there in public media or
in SEC filings open to the public, or if the company would give
it to people who ask for it, it is public.  If, on the other
hand, the information is not generally available and the company
would not make it available in response to a request, then it is
nonpublic rather than public.  It follows from what I have said

-39-

that information is not necessarily nonpublic simply because
there has been no public announcement or because only a few
people have been made aware of it.  On the other hand, if
information has not been disclosed and is kept confidential by a
company, it is nonpublic.  Whether information is nonpublic is an
issue of fact for you to decide.

> Adapted from the charge of the Hon. Richard M.
> Berman, in United States v. Robles, 00 Cr. 1169
> (RMB) (S.D.N.Y., September 17 - October 2, 2002);
> see SEC v. Mayhew, 121 F.3d 44, 50 (2d Cir. 1997)
> (holding that tip from corporate insider which is
> more reliable or specific than public rumors is
> nonpublic despite existence of such rumors), cited
> in  United States v. Cusimano, 123 F.3d 83, 89 (2d
> Cir. 1997); United States v. Libera, 989 F.2d 596,
> 601 (2d Cir. 1993) ("trading on stolen information
> that is not fully impounded in price is a misuse
> of such information whether or not others are also
> trading on it").

REQUEST NO.  19.

Securities Fraud:  First Element --
Scheme or Artifice to Defraud --  Materiality

In order to find that Naseem breached his duty of trust, you must also be persuaded, beyond a reasonable doubt, as to the Count you are considering, that the information Naseem disclosed to Rahim, was "material" at the time the information was disclosed.

A fact is "material" if it reasonably would be expected to be important to a reasonable and prudent person in taking action of relevance to the issues in the case.  Within the particular context of the purchase and sale of stocks, a fact is material if there is a substantial likelihood that a reasonable investor would consider the fact important in deciding whether to buy, sell, or hold securities, and at what price to buy or sell.

Put another way, there must be a substantial likelihood that the fact would have been viewed by the reasonable investor as having significantly altered the total mix of information then available.  In considering whether information about a particular event was material, you may consider how probable it was that the event would occur at the time the information was disclosed, as well as the importance of the event to the company in question.

Adapted from the charge of the Hon. Richard M.
Berman, in United States v. Robles, 00 Cr. 1169
(RMB) (S.D.N.Y., September 17 - October 2, 2002).

-41-

REQUEST NO.  20.

Securities Fraud:  First Element --
Knowing Possession/Use of Inside Information

The Government must prove beyond a reasonable doubt
that Rahim purchased or sold stock using material, nonpublic
information that had been given to him by the Defendant.  A
person uses material, nonpublic information in connection with a
stock sale or purchase if that information is a factor in his
decision to purchase or sell the stock.

How do you tell whether a person who has material
nonpublic information and who buys or sells a stock while in
possession of that information, "uses" the information to do so?
Bear in mind that the law requires only that the information be a
factor in the decision to buy or sell.  It need not be the only
consideration.  You should consider also the materiality of the
information - in other words, how significant the information
would be in deciding upon whether to buy or sell.  In many
circumstances, the more important the information, the more
likely it is that the information was a factor in the decision.
Remember too that the material information is in the mind of the
trader.  While it is possible for it to remain unused, it is very
difficult for material information to lay idle in the human
brain.  If, after considering all of the circumstances, you are
persuaded beyond a reasonable doubt that material nonpublic
information given to Rahim by the Defendant was a factor, however

-42-

small, in the Defendant's decision to buy or sell shares, then

this element will have been satisfied.

>Adapted from the charge of the Hon. Richard M.
>Berman, in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169
>(RMB) (S.D.N.Y., September 17 - October 2, 2002)

REQUEST NO.  21.

Securities Fraud:  First Element --
Scheme or Artifice to Defraud -- Benefit to Tipper

If you find that the defendant did breach his duties to
Credit Suisse and/or its clients, by disclosing material,
nonpublic information to Rahim, and that Rahim traded in the
security specified in the Count you are considering on the basis
of that information, you must next determine whether the
defendant received a direct or indirect personal benefit from
giving Rahim the inside information.  You may find that the
defendant received a direct or indirect personal benefit from
giving inside information if you find that the defendant gave the
information to Rahim *with the intention to benefit Rahim, or* as a
gift in connection with their personal relationship.  In deciding
whether the defendant received such a benefit, you may also
consider, among other things, whether the defendant gave the
information to Rahim in exchange for a share of the profits
expected to be gained from illegal trades.

> Adapted from the charge of the Hon. Richard M.
> Berman, in United States v. Robles, 00 Cr. 1169
> (RMB) (S.D.N.Y., September 17 - October 2, 2002);
> see also Dirks v. SEC, 463 U.S. 646, 664 (1983)
> ("there may be a relationship between the insider
> and the recipient that suggests a quid pro quo
> from the latter, or an intention to benefit the
> particular recipient.  The elements of fiduciary
> duty and exploitation of nonpublic information
> also exist when an insider makes a gift of
> confidential information to a trading relative or
> friend"); see also SEC v. Sargent, 229 F.3d 68, 77

-44-

(1st Cir. 2000) ("maintain[ing] a useful
networking contact" constitutes a benefit).

<u>REQUEST NO.  22.</u>

Securities Fraud:  First Element -- Scheme or
<u>Artifice to Defraud -- In Connection With Purchase Or Sale</u>

To satisfy its burden of proof on the first element of Counts Two through Twenty-Nine, the Government must also prove beyond a reasonable doubt that the scheme described in the Indictment was in connection with the purchase or sale of the specified securities.

It is sufficient for purposes of this element if you find that the device, scheme or artifice to defraud related to, or touched on, the purchase or sale of securities, that is, was directly related to the securities trading process, which includes the buying and selling of stocks or stock options.

Adapted from the charge of the Hon. Richard M. Berman, in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002).

<u>REQUEST NO.  23.</u>

Securities Fraud: Second
<u>Element -- Knowledge, Intent and Willfulness</u>

Everything I have been telling you thus far on Counts Two through Twenty-Nine relates to the first element of the crime of securities fraud, that is, the existence of a fraudulent scheme.

The second element of the substantive offense charged in Counts Two through Twenty-Nine that the Government must prove beyond a reasonable doubt is that the defendant participated in the scheme to defraud, that is, the insider trading scheme alleged in the Indictment, knowingly, willfully, and with intent to defraud.

To "participate" in a scheme to defraud means to associate oneself with it with a view and intent to make it succeed.

I have already defined "knowingly," "willfully," and "intentionally" for you.

For the Defendant to have acted with the specific intent to defraud means that he must have known of the fraudulent nature of the scheme and acted with the intent that it succeed. In other words, to act with an intent to defraud means to act knowingly and with a specific intent to deceive, ordinarily -- but not necessarily -- for the purpose of causing some loss to another, or to bring some gain to oneself.

-47-

It is not required that the Government show that the
Defendant, in addition to knowing what he was doing and
deliberately doing it, also knew that he was violating some
particular federal statute.  But the Defendant must have acted
with the intent to help carry out some essential step in the
execution of the scheme to defraud that is alleged in the
Indictment.

It is not a willful deceptive device in contravention
of the federal securities laws for a person to use his superior
financial or expert analysis or his educated guesses or
predictions, or his past practice or experience to determine
which securities to purchase or sell.  Nor is it a deceptive
device in contravention of the federal securities laws for a
person to buy or sell securities based on rumors, gossip,
stories, or any other source consisting of unverified,
unsubstantiated information.

The question of the Defendant's intent is a question of
fact that you are called upon to decide, just as you determine
any other fact at issue.  Intent to defraud involves the state of
a person's mind and the purpose with which he or she acted at the
time the acts in question occurred.  Direct proof of knowledge
and fraudulent intent is almost never available, and is not
required to find that such proof existed.  It would be a rare
case where it could be shown that a person wrote or stated that

as of a given time in the past he committed an act with
fraudulent intent.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent,
though subjective, may be established by circumstantial evidence,
based upon a person's outward manifestations, his words, his
conduct, his acts, and all the surrounding circumstances
disclosed by the evidence and the rational or logical inferences
that may be drawn therefrom.  Circumstantial evidence, if
believed, is of no less value than direct evidence.

Relevant in this regard may be the conduct of the
Defendant, which, in light of the other evidence in the case, may
tend to prove knowledge, intent or willfulness.  Thus, for
example, you may consider as relevant any conduct engaged in by
the Defendant which has the effect of concealing his activities,
including false statements made to others concerning material
facts; any unusual, substantial, or risky securities trading
activity; the timing and amounts of the Defendant's trading in
relation to the public announcements identified in the
Indictment; and parallel trading between the Defendant and his
alleged co-conspirator; all are conduct from which willfulness
may be inferred.  On the other hand, you may consider any
evidence that the Defendant engaged in these activities openly
and without an attempt to conceal, or voluntarily and honestly

-49-

brought his full involvement to light, as evidence of a lack of willfulness.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the Defendant is a complete defense to a charge of securities fraud. It is for you to decide whether the Defendant acted in good faith or not.  If you decide that the Defendant at all relevant times acted in good faith, it is your duty to acquit him.  That is because, however misleading or deceptive conduct may have been, the law is not violated if the Defendant acted in good faith and held an honest belief that his actions were proper and not in furtherance of any illegal venture.  The Defendant has no burden to establish the defense of good faith, however.  The burden is on the Government to prove criminal intent and consequent lack of good faith beyond a reasonable doubt.

The question of the Defendant's intent is a question of fact that you are called upon to decide, just as you determine any other fact at issue.

If you find that the Defendant was not a knowing participant in the scheme or lacked the intent to deceive, you must acquit the Defendant.  Conversely, if you find that the Government has established beyond a reasonable doubt not only the first element, namely, the existence of a scheme to defraud, but also the second element, that the Defendant was a knowing

-50-

participant and acted with intent to defraud, and if the
Government also establishes the other element, as to which I am
about to instruct you, then you must convict the Defendant.

    Adapted from the charge of the Hon. Richard M. Berman,
in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB)
(S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO. 24.

Securities Fraud:  Third
Element -- Instrumentality of Interstate Commerce

The third and final element that the Government must prove beyond a reasonable doubt is that the Defendant knowingly used, or caused to be used any instrumentalities of interstate commerce, or used or caused to be used a facility of a national securities exchange in furtherance of the scheme to defraud.

The term "instrumentalities of interstate commerce" means instruments, devices, and means of conducting trade, commerce, transportation, or communication among any two states. Instrumentalities of interstate commerce include the use purely within one state of a telephone or any other instrument used to conduct interstate communication.

I instruct you that the New York Stock Exchange, the National Association of Securities Dealers Automatic Quotation System, which is known as the NASDAQ, the American Stock Exchange, and the Chicago Board Options Exchange, are all national securities exchanges.  The phrase "facility of a national securities exchange" includes any property or services maintained by the New York Stock Exchange, American Stock Exchange, NASDAQ, or the Chicago Board Options Exchange.

The Government need not prove that the Defendant directly or personally was involved in any use of an instrumentality of interstate commerce, or use of any facility of

a national securities exchange.  It is enough if you find that the Defendant, by his acts, directly or indirectly initiated the steps, or aided, abetted, counseled, or induced others to initiate steps that resulted in a chain of cause and effect resulting in the use of an instrumentality of interstate commerce, or use of a facility of a national securities exchange. This could mean something such as placing an interstate telephone call or placing an order with a brokerage firm to buy or sell a security.

It is not necessary that the items sent through an instrumentality of interstate commerce did or would contain any fraudulent material, or anything criminal or objectionable.  The matter communicated may be entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

The use of any instrumentality of interstate commerce need not be central to the execution of the scheme.  All that is required is that the use of any instrumentality of interstate commerce bear some relation to the object of the scheme or fraudulent conduct.

> Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO.  25.

Venue

In addition to the foregoing elements of securities fraud, you must consider the issue of venue, namely whether any act in furtherance of the unlawful activity occurred within the Southern District of New York.  As I mentioned earlier, the Southern District of New York includes Manhattan.

In this regard, the Government need not prove that the crime charged was committed in the Southern District of New York or that the defendant or any alleged co-conspirator was even physically present here.  It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred within the Southern District of New York.

As to this venue requirement only, the Government need not meet the burden of proof beyond a reasonable doubt.  On this venue requirement only, the Government meets its burden of proof if it establishes by a preponderance of the evidence that an act in furtherance of the crime occurred within this District.  A preponderance of the evidence means that something is more likely than not.

Adapted from the charge of the Hon. Richard M. Berman,
in United States v. Robles, 00 Cr. 1169 (RMB)
(S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO.  26.

Conscious Avoidance

[If Applicable]

In determining whether the defendant acted knowingly and intentionally, you may consider whether the defendant deliberately closed his eyes **to what would otherwise have been obvious to him** *to what otherwise would have been obvious as part of a conscious effort to avoid knowledge of the unlawful nature of his conduct.* **However**, guilty knowledge may not be established by demonstrating that the Defendant was merely negligent, foolish or mistaken. *However, one may not willfully and intentionally remain ignorant of a fact material and important to his conduct in order to escape the consequences of criminal law.*

If you find that the Defendant was aware of a high probability that (e.g. the information the defendant provided to Ajaz Rahim was material and nonpublic and/or that Rahim would trade in securities while in possession of such information) and that the Defendant acted with deliberate disregard of the facts, you may find that the Defendant acted knowingly *unless you find that the defendant actually believed that he was not engaged in such unlawful behavior. In other words, a defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts*

-55-

*which would confirm to him that he was engaged in criminal*

*conduct.*

It is entirely up to you whether you find that the

Defendant deliberately closed hi eyes and any inferences to be

drawn from the evidence on this issue.

Adapted from the charge of the Hon. Richard M. Berman,
in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB)
(S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO. 27.

Proof of Profit Not Necessary

It does not matter whether *the alleged unlawful conduct charged in any of the Counts of the Indictment was successful or not, or that* the defendant profited or received any financial benefits as a result of the alleged scheme.  Success is not an element of any of the crimes charged.

Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002).

## REQUEST NO.  28.

### Defendant's Right Not To Testify

[If Applicable]

Defendant Hafiz Naseem did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he is not guilty.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations in the jury room.

Adapted from the charge of Hon. Lewis A. Kaplan in United States v. Eggers, 97 Cr. 1004 (LAK) (S.D.N.Y., July 29-30, 1998); and from L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 5-21.

<u>REQUEST NO.  29.</u>

<u>Defendant's Testimony</u>

[If Applicable]

In this case, Hafiz Naseem has taken the witness stand. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case.

Adapted from the charge of the Hon. Richard M. Berman,
in <u>United States</u> v. <u>Robles</u>, 00 Cr. 1169 (RMB)
(S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO.  30.

Law Enforcement Witnesses

You have heard the testimony of witnesses employed as law enforcement officers.  The fact that a witness may be employed by the Government as a law enforcement officer does not mean that his or her testimony is necessarily deserving of any more or any less consideration than that of any ordinary witness.  As with other witnesses, you may consider whether that person's testimony is colored by a personal or a professional interest in the outcome of the case.  It is your decision, after reviewing all of the evidence, to give the testimony of a law enforcement witness whatever weight, if any, you think it deserves.

Adapted from the charge of the Hon. Richard M. Berman,
in United States v. Robles, 00 Cr. 1169 (RMB)
(S.D.N.Y., September 17 - October 2, 2002).

<u>REQUEST NO.  31.</u>

<u>Particular Investigative Techniques Not Required</u>

[If Applicable]

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by the Government.  There is no legal requirement, however, that the Government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques.  The Government is not on trial.  Law enforcement techniques are not your concern.

Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

Adapted from the charge of Hon. Lewis A. Kaplan in <u>United States v. Eggers</u>, 97 Cr. 1004 (LAK) (S.D.N.Y., July 29-30, 1998); and from L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u>, Instr. 4-4.

REQUEST NO.  32.

Character Witnesses

[Requested If The Defendant Calls Character Witnesses]

During the course of this trial, there has been testimony that Hafiz Naseem has a reputation for honesty and integrity in his community.  That testimony bears on Naseem's character.  Character testimony should be considered together with all the other evidence in the case in determining the guilt or innocence of Hafiz Naseem.  *If on all the evidence, including the character evidence, you are satisfied beyond a reasonable doubt that Hafiz Naseem is guilty, a showing that he previously enjoyed a reputation of good character does not justify or excuse the offense and you should not acquit the defendant merely because you believe he is a person of good repute.*

*The testimony of a character witness is not to be taken by you as the witness's opinion as to the guilt or innocence of a defendant.*  The guilt or innocence of Hafiz Naseem is for you alone to determine, and that should be based on all the evidence you have heard in the case.

> Adapted from L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 5-15; and from the charge in United States v. Pujana-Mena, 949 F.2d 24, 27-32 (2d Cir. 1991) (defendant is not entitled to a charge that character evidence "standing alone" is enough for acquittal).

-62-

REQUEST NO.  33.

Variance in Dates, Times, Amounts, Etc.

You will notice that the Indictment refers to various dates, times, and amounts.  It does not matter if a specific transaction is alleged to have occurred on or about a specific date or that it involved a specific number of shares or amount of money, but the testimony indicates that in fact it was a different date or amount.  The law requires only a substantial similarity between the dates and amounts alleged in the Indictment and the dates and amounts established by the evidence. The same goes for most of the other factual contentions in the Indictment.  Thus, it is not necessary for the Government to prove, for example, the exact dates or amounts of money specified in any of the counts.

Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002).

REQUEST NO.  34.

Charts and Summaries

        The parties have presented exhibits in the form of charts and summaries.  These exhibits purport to summarize the underlying evidence that was used to prepare them, and were shown to you to make the other evidence more meaningful and to aid you in considering the evidence.  They are no better than the testimony or documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater weight to these charts and summaries than you would give to the evidence on which they are based.

        It is for you to decide whether the charts and summaries correctly present the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

        Adapted from the charge of the Hon. Richard M. Berman, in United States v. Robles, 00 Cr. 1169 (RMB) (S.D.N.Y., September 17 - October 2, 2002).

## REQUEST NO.  35.

### Persons Not on Trial

You may not draw any inference, favorable or unfavorable, from the fact that any person in addition to the defendant is not on trial here.  You also may not speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

Adapted from Judge Werker's charge in United States v. Barnes, S 77 Cr. 190 (Nov. 29, 1977), aff'd, 604 F.2d 121 (2d Cir. 1979), cert. denied, 446 U.S. 907 (1980).

REQUEST NO.  36.

Stipulations

[If Applicable]

In this case you have heard evidence in the form of stipulations.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given the testimony.  However, it is for you to determine the effect to be given that testimony.

You have also heard evidence in the form of stipulations that contain facts that were agreed to be true.  In such cases, you must accept those facts as true.

Adapted from the charge of Judge Pierre N. Leval
in United States v. Mucciante, 91 Cr. 403
(S.D.N.Y. 1992), and from Sand, Modern Federal
Jury Instructions, Instrs. 5-6, 5-7.

-66-

<u>REQUEST NO.  37.</u>

<u>Uncalled Witnesses -- Equally Available To Both Sides</u>

[If applicable]

There are people whose names you heard during the course of the trial but did not appear to testify.  The defense attorney has referred to their absence from the trial.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

On the other hand, there is one or more individual whose name you have heard who was not available as a witness for either side.  Thus you have heard testimony regarding [insert witness name(s)].  I instruct you that [insert witness name(s)] was not available as a witness to any party.  You should not speculate about why he was unavailable.  Nor should you draw any inference, favorable or unfavorable, towards the Government or the defendant because he did not testify.  You must decide the case based upon the evidence before you, not based on speculation.

You should remember my instruction, however, that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Adapted from Sand, <u>Modern Federal Jury Instructions</u>, Instr. 6-7.

REQUEST NO.  38.

Expert Testimony

[If Applicable]

You have heard testimony from what we call expert witnesses.  Expert witnesses are witnesses who, by education or experience, have acquired learning in a science or a specialized area of knowledge.  Such witnesses are permitted to give their opinions as to relevant matters in which they profess to be experts and give their reasons for their opinions.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Your role in judging credibility applies to experts as well as to other witnesses.  You should consider the expert opinions that were received in evidence in this case and give them as much or as little weight as you think they deserve.  If you should decide that the opinion of an expert was not based on sufficient education, experience, or data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any reason, or if the opinion of the expert was outweighed, in your judgment, by other evidence in the case, then you might disregard the opinion of the expert entirely or in part.

-69-

On the other hand, if you find the opinion of an expert is based on sufficient data, education, and experience, and the other evidence does not give you reason to doubt his or her conclusions, you would be justified in placing great reliance on the expert's testimony.

> Adapted from the charge of Judge Pierre N. Leval in <u>United States</u> v. <u>Mucciante</u>, 91 Cr. 403 (PNL) (S.D.N.Y. 1992), and from the charge of Judge Michael B. Mukasey in <u>United States</u> v. <u>Mensah</u>, 91 Cr. 705 (MBM) (S.D.N.Y. 1991).

<u>REQUEST NO.  39.</u>

<u>Use Of Evidence Obtained Pursuant To Searches</u>

You have heard testimony about evidence obtained pursuant to a search warrant.  Evidence obtained from those searches was properly admitted in this case, and may be properly considered by you.  Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven each defendant's guilt beyond a reasonable doubt.

> Adapted from the charges of Judge Pierre N. Leval in <u>United States</u> v. <u>Ogando</u>, 90 Cr. 469 (PNL) (S.D.N.Y. 1991), <u>aff'd</u>, 968 F.2d 146 (2d Cir. 1992), and <u>United States</u> v. <u>Mucciante</u>, 91 Cr. 403 (PNL) (S.D.N.Y. 1992).

-71-

<u>REQUEST NO. 40.</u>

<u>Preparation of Witnesses</u>

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that, as I indicated earlier in the trial, there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what

inferences you draw from such preparation are matters completely

within your discretion.

> Charge of Hon. Michael B. Mukasey in <u>United</u>
> <u>States</u> v. <u>Abdul Latif Abdul Salam</u>, 98 Cr. 208
> (MBM) (S.D.N.Y. 1999).


Dated:    New York, New York
          November 21, 2007


                         Respectfully submitted,

                         MICHAEL J. GARCIA
                         United States Attorney for the
                         Southern District of New York

              By:    _____/s/_____
                         JOSHUA KLEIN
                         REED MICHAEL BRODSKY
                         Assistant United States Attorneys
                         Tel. (212) 637-2397/2492


              By:    _____/s/_____
                         MICHAEL BACHNER, ESQ.


-73-