*Original*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :          **SUPERSEDING**
                                                             **INDICTMENT**
            -v.-                                  :

HAFIZ MUHAMMAD ZUBAIR NASEEM, and                 :          S1 07 Cr. 610  (RMB)
AJAZ RAHIM,                                       :

                                                  :

                        Defendants.               :

- - - - - - - - - - - - - - - - - - - x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 2 0 2007
```

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

        The Grand Jury charges:

### Relevant Entities and Individuals

        1.  At all relevant times, Credit Suisse Securities,
USA, LLC ("Credit Suisse"), a wholly owned subsidiary of Credit
Suisse Bank, operated as an investment bank and securities broker-
dealer, located in New York, New York.  A significant portion of
Credit Suisse's business was devoted to advising corporations on
various financings and business related transactions.

        2.  At all relevant times, HAFIZ MUHAMMAD ZUBAIR
NASEEM, the defendant, was employed by Credit Suisse in the firm's
Investment Banking Division, in the Global Energy Group.

        3.  At all relevant times, AJAZ RAHIM, the defendant,
was employed as Country Head of Investment Banking at Faysal Bank,
a financial institution located outside the United States.  At all

relevant times, neither RAHIM nor Faysal Bank conducted business with Credit Suisse.

## Credit Suisse's Confidentiality Policy

4.    At all relevant times, Credit Suisse maintained written policies prohibiting the premature dissemination of material non-public and confidential information relating to pending transactions and financings in which Credit Suisse was involved.  At or about the time HAFIZ MUHAMMAD ZUBAIR NASEEM, the defendant, commenced his employment at Credit Suisse, he was provided with a copy of Credit Suisse's "Global Business Conduct Manual," and certified that he had read the document.  NASEEM also signed a "Confidential Information and Proprietary Information Acknowledgment" in which he specifically acknowledged his understanding of various Credit Suisse policies and his obligation to comport with these policies as a Credit Suisse employee.  Among other things, NASEEM acknowledged that:

> I understand it is a criminal offense to trade
> or encourage others to trade on inside
> information.  I also may face civil liability
> and regulatory sanctions for disclosing or
> using Confidential and Proprietary information
> inappropriately.

5.    The Global Business Conduct Manual defined "inside information" as information that "relates to the securities of an issuer or group of issuers, is not publicly known and is material."  The Manual defined as "material for this purpose" information that "if made public, would likely have a significant

2

impact on the price of the security, or a reasonable investor
would consider important in deciding whether to purchase, hold or
sell the security." Furthermore, the Global Business Conduct
Manual specifically admonished that:

> If you have inside information, you generally
> may not trade or deal in the securities in
> question, encourage others to trade or deal in
> the securities in question, or reveal or 'tip'
> the information to another person, other than
> in the proper performance of your job.

> * * *

> Failure to strictly observe the laws and rules
> regarding inside information is a criminal
> offense in many jurisdictions where Credit
> Suisse conducts business.

### The Insider Trading Scheme

6.    At various times relevant to this Indictment,
Credit Suisse provided financial services and investment banking
advice and services to the Credit Suisse clients listed below, in
connection with business combination transactions (the "Credit
Suisse Transactions"). While employed at Credit Suisse, HAFIZ
MUHAMMAD ZUBAIR NASEEM, the defendant, had access to material,
non-public information concerning the Credit Suisse Transactions
listed below:

| CREDIT SUISSE CLIENT | COUNTER PARTY | TRANSACTION | DATE OF PUBLIC ANNOUNCEMENT |
|---|---|---|---|
| Northwestern Corporation | Babcock & Brown Infrastructure | Babcock & Brown Infrastructure to acquire Northwestern Corporation | 4/25/06 |
| Woodside Petroleum | Energy Partners, Ltd. | Woodside offer to acquire Energy Partners Ltd. | 8/28/06 |
| Compagnie Generale de Geophysique SA | Veritas DGC Inc. | Compagnie Generale de Geophysique SA to acquire Veritas DGC Inc. | 9/5/06 |
| Apollo Management L.P. | Jacuzzi Brands, Inc. | Apollo Management L.P. to acquire Jacuzzi Brands, Inc. | 10/11/06 |
| CB Richard Ellis Group, Inc. | Trammell Crow Company | CB Richard Ellis Group, Inc. to acquire Trammell Crow Company | 10/31/06 |
| Express Scripts, Inc. | Caremark Rx, Inc. | Express Scripts Inc. to acquire Caremark Rx, Inc. | 12/18/06 |
| M&F Worldwide | John Harland | M&F Worldwide to acquire John Harland | 12/20/06 |
| Hydril | Tenaris, S.A. | Tenaris, S.A. to acquire Hydril | 2/12/07 |
| TXU | Kohlberg, Kravis & Roberts | Kohlberg, Kravis & Roberts and others to acquire TXU | 2/26/07 |

7.    From in or about March 2006 through at least in or about February 2007, HAFIZ MUHAMMAD ZUBAIR NASEEM and AJAZ RAHIM,

4

the defendants, and others, known and unknown, participated in a scheme to defraud by executing securities transactions based on material, nonpublic information regarding forthcoming announcements relating to the Credit Suisse Transactions listed in paragraph 6 above.  HAFIZ MUHAMMAD ZUBAIR NASEEM, the defendant, regularly and repeatedly called AJAZ RAHIM, the defendant, and provided RAHIM with material non-public information regarding the Credit Suisse Transactions (the "Credit Suisse Inside Information") in violation of (a) the fiduciary and other duties of trust and confidence owed by NASEEM to Credit Suisse and its clients, (b) the expectations of confidentiality of the Credit Suisse clients; and (c) Credit Suisse's written policies regarding the use and safekeeping of confidential and material, non-public information.  NASEEM provided the Credit Suisse Inside Information to RAHIM for personal benefit.

8.    To carry out the scheme, HAFIZ MUHAMMAD ZUBAIR NASEEM, the defendant, typically called AJAZ RAHIM, the defendant, at his home or on RAHIM's cell phone in advance of a public announcement that a particular target company listed in paragraph 6 above was to be acquired by another entity and NASEEM provided Credit Suisse Inside Information to RAHIM regarding the acquisition in question (hereafter, the target companies listed in paragraph 6 above are referred to as the "Issuers").  Shortly after receiving such a call RAHIM purchased securities of that

Issuer based on the Credit Suisse Inside Information he received from NASEEM.  Following public disclosure that an Issuer was being acquired -- which always occurred after RAHIM had already purchased securities in that particular Issuer -- RAHIM quickly sold all of the securities he had purchased in advance of the public disclosures.  RAHIM executed dozens of securities transactions, including trades in offshore accounts, based on Credit Suisse Inside Information and profited from his trading in the securities of each of the Issuers.  RAHIM's trading generated total proceeds from the scheme in excess of $9 million and profits in excess of $7.5 million.

### The Conspiracy

9.     From at least in or about April 2006 up to and including in or about February 2007, in the Southern District of New York and elsewhere, HAFIZ MUHAMMAD ZUBAIR NASEEM and AJAZ RAHIM, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### Object of the Conspiracy

### Securities Fraud

10.  It was a part and object of the conspiracy that

HAFIZ MUHAMMAD ZUBAIR NASEEM and AJAZ RAHIM, the defendants, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### **Means and Methods of the Conspiracy**

11.    Among the means and methods by which HAFIZ MUHAMMAD ZUBAIR NASEEM and AJAZ RAHIM, the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

a.    NASEEM misappropriated the Credit Suisse Inside Information in violation of (a) the fiduciary and other

7

duties of trust and confidence that NASEEM owed to Credit Suisse and Credit Suisse clients; (b) the expectations of confidentiality of the Credit Suisse clients; and (c) Credit Suisse's written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b.     NASEEM, in breach of his duty of confidentiality to Credit Suisse and its clients, disclosed the Credit Suisse Inside Information that he had misappropriated from Credit Suisse and the Credit Suisse clients to RAHIM, with the understanding that RAHIM would use the Credit Suisse Inside Information to purchase and sell securities, and thereby receive substantial illegal profits.

c.     RAHIM, while in possession of the Credit Suisse Inside Information that he knew had been misappropriated by NASEEM in breach of NASEEM's duty to keep such information confidential, purchased and sold securities based on such information and thereby received substantial illegal profits.

**Overt Acts**

12.     In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.     In or about April 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Northwestern Corporation by Babcock & Brown

8

Infrastructure prior to the public announcement of that transaction.

b.  From in or about July 2006 through in or about September 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Energy Partners Ltd. by Woodside Petroleum prior to the public announcement of that transaction.

c.  From in or about June 2006 through in or about September 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Veritas DGC, Inc. by Compagnie Generale de Geophysique SA prior to the public announcement of that transaction.

d.  From in or about September 2006 through in or about October 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Jacuzzi Brands, Inc. by Apollo Management L.P. prior to the public announcement of that transaction.

e.  In or about October 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Trammell Crow Company by CB Richard Ellis Group, Inc. prior to the public announcement of that transaction.

f.  In or about December 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of John Harland by M&F Worldwide prior to

9

the public announcement of that transaction.

g.  In or about December 2006, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Caremark RX, Inc. by Express Scripts, Inc. prior to the public announcement of that transaction.

h.  In or about February 2007, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of Hydril by Tenaris, S.A. prior to the public announcement of that transaction.

i.  In or about February 2007, NASEEM provided RAHIM with material, nonpublic information concerning the potential acquisition of TXU by Kohlberg Kravis & Roberts and others prior to the public announcement of that transaction.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH TWENTY-NINE

(Insider Trading)

The Grand Jury further charges:

13.  The allegations contained in paragraphs 1 through 8, 11 and 12 are repeated and realleged as though fully set forth herein.

14.  On or about the dates set forth below, in the Southern District of New York and elsewhere, HAFIZ MUHAMMAD ZUBAIR NASEEM and AJAZ RAHIM, the defendants, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and

instrumentalities of interstate commerce, the mails and the
facilities of national securities exchanges, in connection with
the purchase and sale of securities, did use and employ
manipulative and deceptive devices and contrivances, in violation
of Title 17, Code of Federal Regulations, Section 240.10b-5, by
(a) employing devices, schemes and artifices to defraud; (b)
making untrue statements of material facts and omitting to state
material facts necessary in order to make the statements made, in
the light of the circumstances under which they were made, not
misleading; and (c) engaging in acts, practices and courses of
business which operated and would operate as a fraud and deceit
upon persons, to wit, RAHIM executed the securities transactions
listed below based on material, nonpublic information he obtained
from NASEEM:

| COUNT | DATE | SECURITY | TRANSACTION |
|---|---|---|---|
| TWO | April 6, 2006 | Northwestern Corporation | purchased 2,000 shares |
| THREE | April 7, 2006 | Northwestern Corporation | purchased 2,000 shares |
| FOUR | April 24, 2006 | Northwestern Corporation | purchased 16,000 shares |
| FIVE | June 20, 2006 | Veritas DGC, Inc. | purchased 1,000 shares |
| SIX | July 5, 2006 | Veritas DGC, Inc. | purchased 1,000 shares |
| SEVEN | July 5, 2006 | Veritas DGC, Inc. | purchased 500 shares |

| EIGHT | July 10, 2006 | Veritas DGC, Inc. | purchased 1,000 shares |
|---|---|---|---|
| NINE | July 21, 2006 | Veritas DGC, Inc. | purchased 1,000 shares |
| TEN | July 21, 2006 | Energy Partners, Ltd. | purchased 1,000 shares |
| ELEVEN | July 25, 2006 | Energy Partners, Ltd. | purchased 2,000 shares |
| TWELVE | July 26, 2006 | Energy Partners, Ltd. | purchased 2,000 shares |
| THIRTEEN | July 27, 2006 | Energy Partners, Ltd. | purchased 3,000 shares |
| FOURTEEN | July 27, 2006 | Energy Partners, Ltd. | purchased 3,000 shares |
| FIFTEEN | August 31, 2006 | Veritas DGC, Inc. | purchased 6,000 shares |
| SIXTEEN | September 13, 2006 | Jacuzzi Brands, Inc. | purchased 5,000 shares |
| SEVENTEEN | September 15, 2006 | Jacuzzi Brands, Inc. | purchased 20,000 shares |
| EIGHTEEN | September 20, 2006 | Jacuzzi Brands, Inc. | purchased 5,000 shares |
| NINETEEN | October 9, 2006 | Jacuzzi Brands, Inc. | purchased 5,000 shares |
| TWENTY | October 16, 2006 | Tramell Crow Company | purchased 2,000 shares |
| TWENTY-ONE | October 17, 2006 | Tramell Crow Company | purchased 8,000 shares |
| TWENTY-TWO | December 5, 2006 | John H. Harland Co. | purchased 5,000 shares |
| TWENTY-THREE | December 6, 2006 | John H. Harland Co. | purchased 15,000 shares |
| TWENTY-FOUR | December 7, 2006 | John H. Harland Co. | purchased 5,000 shares |
| TWENTY-FIVE | December 14, 2006 | Caremark Rx, Inc. | purchased 18,000 shares |

| TWENTY-SIX | February 5, 2007 | Hydril Company | purchased 15,000 shares |
| TWENTY-SEVEN | February 8, 2007 | Hydril Company | purchased 5,000 shares |
| TWENTY-EIGHT | February 23, 2007 | TXU | purchased 3500 $57.50 3/17/07 calls |
| TWENTY-NINE | February 23, 2007 | TXU | purchased 3200 $60.00 3/17/07 calls |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2).

## FORFEITURE ALLEGATION

15. As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Section 371; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, as alleged in Counts One through Twenty-Nine of this Indictment, HAFIZ MUHAMMAD ZUBAIR NASEEM and AJAZ RAHIM, the defendants, shall forfeit to the Untied States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, in an amount not less than approximately $9 million.

## Substitute Assets Provision

16. If any of the above-described forfeitable property, as a

13

result of any act or omission of the defendant:

> (i)      cannot be located upon the exercise of due diligence;
>
> (ii)     has been transferred or sold to, or deposited with, a third party;
>
> (iii)    has been placed beyond the jurisdiction of the court;
>
> (iv)     has been substantially diminished in value; or
>
> (v)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

> (Title 15, United States Code, Sections 78j(b), 78ff;
> Title 18, United States Code, Sections 371 and 981;
> Title 21, United States Code, Section 853(p);
> Title 28, United States Code, Section 2461;
> and Title 17, Code of Federal Regulations,
> Sections 240.10b-5 and 240.10b5-2.)

_____
FOREPERSON

_Michael J. Garcia_
MICHAEL J. GARCIA
United States Attorney

14