UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                      REPLY MEMORANDUM
                                                                     Indictment # 07 Cr. 610 (RMB)
      -against-

HAFIZ NASEEM,

                Defendant,
------------------------------------------------------X

        Defendant, Hafiz Muhammad Zubair Naseem respectfully submits this reply to the Government's Memorandum in Opposition to Defendant's Double Jeopardy Motion ("Opposition Memo").

    I.    **Defendant Did Not Consent to a Mistrial or Waive His Double Jeopardy Claim**

        The Government argues that Defendant "extinguished his right to assert a double jeopardy claim" when "[d]efense counsel, paraphrasing the legal standard of 'manifest necessity,' stated the Court would have to find 'just cause' [to declare a mistrial] and confirmed that the circumstances 'could give rise to that level if your Honor were to so find." This argument is without merit.

    A.    **Defendant Did Not Consent to the Mistrial**

        The Second Circuit has held that "consent need not be express, but may be implied from the totality of the circumstances attendant on a declaration of mistrial." *United States v. Beckerman,* 516 F.2d 905, 909 (2d Cir. 1975). In *Beckerman,* consent was implied where a defendant was "silent on a mistrial and nothing ***was said to dispel the inference of accord***." *Beckerman,* 516 F.2d at 909 (Emphasis Added).

        Conversely, courts have held that, viewing the totality of the circumstances, consent was either not given or revoked. Thus, the Second Circuit has found that even

where a defendant initially *moved* for a mistrial, he can nevertheless be found to have objected to the declaration of a mistrial by his subsequent acts.

For example, in United States v. Razmilovic, 498 F.3d 136 (2d Cir. 2007), defendant Borghese initially joined in a co-defendant's motion for mistrial. However, "within seconds of the trial court declaring a mistrial Borghese stated that he joined in DeGennaro's request that the jury be polled before any decision on the mistrial was finalized." Razmilovic, 498 F.3d at 147. The Second Circuit held that this statement alone – made after the Court declared a mistrial pursuant to a motion that he had joined but before the jury was discharged – was sufficient to serve as an objection to the mistrial:

> Because Borghese's statement that he joined in DeGennero's request that the jury be polled (before the decision to declare a mistrial was finalized) was both immediate and was made while the trial court could still have changed its decision, we believe Borghese cannot be said to have deliberately foregone his right to have his guilt determined by his original tribunal.

Razmilovic, 498 F.3d at 148.

Similarly, in United States v. Mastrangelo, 662 F.2d 946 (2d Cir. 1981), the Defendant moved for a mistrial, which the Court denied. Thereafter, the Court reconsidered Defendant's motion and granted it, despite Defendant's statement that "the defendant Mastrangelo's position is that we are not moving for a mistrial … At the present time … there is no motion on behalf of the defendant Mastrangelo before the Court at this time." Mastrangelo, 662 F.2d at 949-50. The Second Circuit ruled that the motion for a mistrial was in effect withdrawn by counsel's subsequent statements and that the appropriate standard of review of the Court's mistrial declaration was manifest necessity. Mastrangelo, 662 F.2d at 950.

2

A review of the record shows that defense counsel requested that Juror #8 be excused after learning from the Court that she was aware of the connection between the Third Party and the Defendant. Transcript, pp. 198-99. Defense counsel expressed no opinion regarding Juror #7. After the Court stated that it was inclined to dismiss both jurors and, therefore, was considering declaring a mistrial, Transcript, p. 201, defense counsel asked for time to consider the situation, Transcript, p. 202, and thereafter repeatedly stated the Defendant's preference to either (a) remove Juror #8 and Juror #7 from the panel and proceed; or (b) proceed with the original panel. Transcript, pp. 206-209, 211. While the Government stated that it was "amenable" to a mistrial, Transcript, p. 206, the Defendant never moved for a mistrial and was steadfast in his desire to proceed with the impaneled jury.

Thus, it cannot be said that the Defendant consented to the mistrial.

**B.    The Application of the Manifest Necessity Standard by Both Defense Counsel and the Court Indicates a Mistrial Granted Without the Consent of the Defendant**

The Government, citing *Maula v. Freckleton*, 972 F.2d 27, 29 (2d Cir. 1992), concedes that "no manifest necessity analysis is required when a defendant requests a mistrial, or consents to one." Similarly, in *United States v. Millan*, 17 F.3d 14 (2d Cir. 1993) the Second Circuit held:

> Absent a finding that the Government 'goaded' the defense into moving for a mistrial, principles of double jeopardy do not bar a second prosecution following a mistrial declared at the request of the defendant. *If the defendant does not consent or objects, a mistrial is nevertheless proper if there is manifest necessity.* Because we conclude that the Government did not provoke a mistrial and the court properly determined that there was manifest necessity for declaring a mistrial, the issue of the appellants' consent to the mistrial is of no moment, and we do not pause to address it.

3

*Millan,* 17 F.3d at 18. (Emphasis Added) (Citations omitted). Further, as the Government also acknowledges, citing, *inter alia, United States v. Razmilovic,* 507 F.3d 130, 137 (2d Cir. 2007), where a Court applies the manifest necessity standard, its decision should be reviewed for abuse of discretion. Opposition Memo, pp. 15, 21.

Remarkably, the Government attempts to construe defense counsel's statements to the Court setting forth the legal standard that applies ***only when a defendant does not consent or objects to a mistrial*** as a waiver of defendant's double jeopardy rights. The record simply does not support this conclusion.

The Government highlights an exchange between the Court and defense counsel in response to the Court's question to the parties whether it was "legally appropriate to declare a mistrial in a circumstance like this and start over again." Transcript, p. 208. As the Government acknowledges, "[d]efense counsel, paraphrasing the legal standard of 'manifest necessity,' stated the Court would have to find 'just cause' and confirmed that the circumstances 'could give rise to that level if your Honor were to so find." Opposition Memo, p. 18. This was not, as the Government mischaracterizes it, a concession that "ordering a mistrial in this case constituted a valid exercise of the Court's discretion." Opposition Memo, p. 17. Rather, it was a statement of defense counsel's understanding of the applicable law in response to a direct question from the Court. Since, as both parties agree, this analysis would not be necessary if the Defendant consented to the mistrial, *see* Opposition Memo, p. 18, fn 2, no argument can be made that he consented to the mistrial or waived his double jeopardy rights based on these statements.

4

Further, in rendering its decision, the Court made clear that its ruling was based on a finding of manifest necessity:

> I trust incidentally that you all understand that I'm not suggesting that venality occurred here. What I know is what you now know, and my comments I think speak for themselves. But I think that there is this manifest necessity to insure the integrity of the jury system. And this jury in particular. And I think this is the best way that I can think of as to how to do that.

Transcript, p. 216.

Quite simply, the Defendant made his position clear by requesting that the trial continue with either 13 or 15 jurors and by indicating to the Court that the manifest necessity standard, which only applies where the defendant does not consent or objects, was the appropriate standard for the Court to consider in ordering a mistrial. The Court, in rendering its decision, applied the manifest necessity standard. The Defendant did not waive his right to pursue a double jeopardy claim.[1]

## II.     The Defendant Did Not Create the Circumstances that Caused the Mistrial

The Government's claim that the Defendant created the circumstances that caused the mistrial is similarly not supported by the record.[2] The record is clear that while defense counsel requested that Juror #8 be excused after learning from the Court that she was aware of the connection between the Third Party and the Defendant, Transcript, pp. 198-99, defense counsel expressed no opinion regarding Juror #7. Transcript, pp. 199-202. Indeed after the Court first indicated that it was considering declaring a mistrial,

---

[1] The Government also infers that there is some significance to defense counsel's failure to refute the Court's statement on December 12, 2007 that "for whatever it is worth, I think we achieved what we achieved yesterday consensually." December 12, 2007 Transcript, p. 3. Defense counsel respectfully disagrees with the Court's interpretation, and believes that the record supports defense counsel's interpretation of events. Nevertheless, the jury had already been excused on December 11, 2007.

[2] The defendant's suggestion that the Third Party would be available for questioning once she arrived in Court that day was ignored. The Government's argument that the defense caused the mistrial, when it was the Government that refused the defense offer to create a record of the event is disingenuous.

5

Transcript, p. 201, defense counsel asked for time to consider the situation, Transcript, p. 202, and thereafter repeatedly stated the Defendant's preference to either (a) remove Juror #8 and Juror #7 from the panel and proceed; or (b) proceed with the original panel. Transcript, pp. 206-209, 211. Additionally, as set forth above, defense counsel did not, as the Government continually asserts, agree that a mistrial was appropriate under the circumstances. Thus, Defendant's own actions did not cause the mistrial.

Nor can it be said that the actions of a friend of the Defendant's (the "Third Party") caused the mistrial, or that these actions can be imputed to the Defendant. In this regard, the following is an excerpt of the conversation between the Court and Juror # 8:

> THE COURT: One of the observers thought they might have seen you talking or someone talking to you yesterday who is from the audience, who is not part of the jury pool. So I just wanted to ask you if you know what they're talking about?
> A JUROR: Yes, I do, and I -- I didn't know whether that would be an issue or not. It just so happens that the young lady who had a scarf, she sat next to me.
> THE COURT: In the audience?
> A JUROR: Yes.
> THE COURT: OK.
> A JUROR: And I guess one of your assistants asked her whether she was going to be, you know, selected, and then she said, no, I'm part of the audience.
> THE COURT: I see.
> A JUROR: Then she just made a comment to me about that something about I guess my appearance looked like I would make a good juror.
> THE COURT: Yours or hers?
> A JUROR: Yes, mine because I guess I said something like, you know, this is a little nerve racking or something, and then she says, oh, but you -- your type of person would make a good juror.
> THE COURT: I see.

Transcript, pp. 194-95. This record does not support a finding that the Third Party "caused" the contact that ultimately led to a mistrial. In fact, this record suggests that the Third Party informed an employee of the Court that she was not a member of the venire

6

pool but was nonetheless permitted to sit with potential jurors. The record further suggests that the statement made by the Third Party was in response to a statement made by Juror # 8. Given these circumstances, it can hardly be said that the *Third Party* caused the mistrial, much less the defendant himself.

This view is further supported by the Court's decision to declare a mistrial, in which the Court cited not just "inappropriate contact" between the Third Party and Juror # 8, Transcript p. 212, but also the fact that Juror # 8 and Juror # 7 violated the Court's instructions by having conversations about the case and not informing the Court immediately if inappropriate contact occurs. Transcript, pp. 213-14. Finally, and most significantly, the Court stated that "I trust incidentally that you all understand that I'm not suggesting that venality occurred here." Transcript, p. 216. This statement, combined with the other reasons stated above, indicates a recognition by the Court that the mistrial was not "caused" by any one individual.

Next the Government asserts that if the trial had gone forward with 13 or 15 jurors, the Defendant would have "benefited" by the Third Party "attempting to influence the venire pool," Opposition Memo, p. 34. Putting aside the fact that the record is completely devoid of any information that supports the baseless assertion that the Third Party was attempting to do anything improper, and that in fact the Court found that the opposite was true, Transcript, p. 216, it is not clear what "benefit" the Defendant would have received from the entire incident. The Defendant was left with a choice between continuing with a jury that was allowed to come into contact with a member of the audience or surrendering his right to receive a verdict from that jury. Certainly Mr.

Naseem would have been in a far better position had the Third Party never come into contact with Juror # 8.

### III. The Defendant Does Not Need to Show That Additional Prejudice Was Suffered as a Result of the Mistrial

As the Government suggests, the failure of a Defendant to show additional prejudice suffered as a result of a mistrial declaration does not alter the manifest necessity analysis. *See Illinois v. Somerville,* 410 U.S. 458, 471 (1973) ("Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration"). Nevertheless, Courts have consistently held that this risk of additional prejudice is one of the many dangers faced by a Defendant when a mistrial is ordered:

> The reasons why [the defendant's 'valued right to have his trial completed by a particular tribunal'] merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk than an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed.

*Oregon v. Kennedy,* 456 U.S. 667, 682 (1982), *citing* Arizona v. Washington, 434 U.S. 497, 503-04 (1978).

While the Defendant need not show additional prejudice, the Court should consider whether in fact that enhanced risk has been realized. In this regard, Defendant has recently been notified that the Government intends to offer additional evidence at Mr. Naseem's second trial that, in the Government's view, constitutes either background information or "prior bad acts" pursuant to Rule 404(b). While the Defendant was only made aware of the Government's intention to introduce this evidence for this purpose

yesterday, and has had virtually no opportunity to review the documents, it appears that the Government intends to introduce even more circumstantial evidence of connections between Mr. Rahim and Mr. Naseem in an effort to convince a jury that these alleged activities occurred. The extra month the Government was afforded as a result of the mistrial undoubtedly aided them in this pursuit.

## CONCLUSION

For all of these reasons, the Defendant request that his motion be granted and the indictment be dismissed with prejudice.

---
MICHAEL F. BACHNER, ESQ. MFB-7719

Respectfully submitted,

Bachner & Associates, PC
By: Michael F. Bachner, Esq.,
Kevin T. O'Brien, Esq.
Attorneys for the Defendant
HAFIZ NASEEM
26 Broadway, Suite 2310
New York, New York 10004
Tel: (212) 344-7778
Fax: (212(344-7774)

To: Hon Richard M. Berman
AUSA Joshua Klein
AUSA Reed Brodsky